Sally STEWART, Plaintiff–Respondent,

v.

Jack and Wanda REYNOLDS,
Defendants–Respondents,

and

The City of Reeds Spring, Missouri,
Defendants–Appellants.

No. 24587.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 2002.

Laura J. Johnson and Janice McCain, Springfield, for appellant.

Richard L. Anderson, Kimberling City, for respondent Sally Stewart.

Laurel Stevenson, Springfield, for Jack Reynolds and Wanda Reynolds d/b/a Continental Sleep Center.

Before PREWITT, P.J., PARRISH, J., and MAUS, S.J.

PER CURIAM.

Sally Stewart (Plaintiff) sued Jack and Wanda Reynolds ("Reynolds") and the City of Reeds Spring ("City") for damages for injuries sustained when she fell after leaving Reynolds' store in Reeds Spring, Missouri. After Plaintiff presented her case and rested, the court directed a verdict favorable to Reynolds, but denied City's motion for a directed verdict. Ultimately, the jury found for Plaintiff and against City. The court entered judgment on the jury's verdict, and City appealed. In urging reversal, City claims:

(1) the trial court erred by directing a verdict for Reynolds and against Plaintiff as a jury issue existed about whether the accident site was public or private, and

(2) the evidence established that the hole in the concrete that caused Plaintiff to fall was so open and obvious as to mandate a finding for City as a matter of law.

Finding no merit in these claims, we affirm.

## FACTS

On July 10, 1998, Reynolds operated a retail business at two sites, one on the east side of South Street (Highway 13) in Reeds Spring, Missouri, and the other directly across the street on the west side. A pedestrian crosswalk had been laid out with paint on the asphalt-covered part of South Street, i.e., where motor vehicles traveled and parallel parked. With reference to the Reynolds' stores, the walkway

ran from the sidewalk edge in front of one store to the sidewalk edge in front of the other store.

At about 4:00 p.m. on July 10, Plaintiff first visited the Reynolds' store on the east side of South Street and then headed toward Reynolds' west-side store. The sidewalk in front of the east store was concrete, six to eight feet in width, and approximately twelve to fourteen inches above the level of the street. Virtually all of the sidewalk is within the platted right-of-way of South Street or Highway 13. As Plaintiff and her minor daughters walked out the front door of the east store onto the sidewalk, the pedestrian crosswalk was slightly to their right. Accordingly, she and her daughters turned right and walked on the sidewalk toward the cross-walk area. After walking approximately ten feet, they encountered a concrete step-down or lowered concrete area. The con-crete step-down or lowered area is a notch in the sidewalk approximately four to five feet long, approximately twenty-two to twenty-six inches wide, and approximately five to eight inches deep indented in the street side of the sidewalk. It provides a convenient step-down distance of approxi-mately five to eight inches from the side-walk to the lowered area and approximate-ly nine to ten inches from the lowered area to the street.[1] This lowered area was located so that after stepping down onto it, a person wanting to cross the street could simply walk from the floor of the step onto the street parking area where the walk-way was painted and proceed across the street. In other words, the City provided a crosswalk extending from the notch to the west side of South Street.

Plaintiff testified that as she approached the step or lowered area, she "noticed grass on it" but "did not see the hole" in the bottom of it because of "[a]ll the grass." As Plaintiff stepped down onto the floor of the step, her right foot hit "[o]n the edge of what we now know [was a] deep hole."[2] Her foot rolled to the right and she fell. As a result, she sus-tained what a treating physician later de-scribed as a "double ligament ankle tear." The extent of Plaintiff's injuries is not in dispute.

At trial, City put in evidence a plat of the "Town of Reed's Spring," recorded in 1903 in the Stone County Recorder's of-fice. The plat was signed by persons who declared they were dedicating the streets and alleys "for the use of the public forev-er." The plat portrayed South Street as 60 feet wide, with what is now Reynolds' east-side property (Lot 5, Block 7) fronting on South Street. A witness, Gary W. Brown, testified that the entire width of South Street was consumed by the two travel lanes of the state highway, the shoulders of the highway (used for parallel parking on either side of the street), and the sidewalk adjoining the shoulders of the highway. As he described it, a measure-ment thirty feet east from the centerline of South Street would terminate "[j]ust about at the [Reynolds'] building." Photographic exhibits revealed that the lowered concrete area abutted the parallel-parking portion of the street and was several feet west of the front of Reynolds' building.

---

**1.** No evidence of the foregoing measurements was presented at trial. To the extent our description of the accident site includes dis-tances, they are estimates derived from photo-graphic exhibits.

**2.** Later investigation revealed the hole in the step was three and one-half to four inches deep and "roughly" twelve inches in diame-ter. Unlike previously estimated distances, these distances were established via testimony of a witness who measured the depth of the hole.

When Plaintiff rested, both City and Reynolds moved for a directed verdict. After hearing arguments on the motions, the trial court first recapped the evidence about South Street, i.e., that it was 60 feet wide and the roadway, shoulder parking, and sidewalks consumed the 60–foot area dedicated for street purposes. The court next recounted that City had disavowed "having maintained, built or erected the sidewalks." Even so, the court found that "these are, in fact, public sidewalks." The court then ruled Reynolds' motion as follows: "I ... find that there was no special use ... made by ... Reynolds [relating to the accident site] because there's no showing that they did anything. And therefore, I'm ... sustain[ing] the Motion for a Directed Verdict on behalf of the ... Reynolds."

The trial court denied City's motion for directed verdict, and ultimately City opted to rest without presenting evidence. The jury returned a verdict for Plaintiff of $160,000 and apportioned five percent fault to Plaintiff and ninety-five percent fault to City. Judgment was rendered accordingly, and City's appeal followed.

We provide additional facts below when relevant to our discussion of City's claims of trial court error.

## DISCUSSION AND ANALYSIS

### Point I: Alleged Error In Directing A Verdict For Reynolds

We reproduce City's first point as follows:

"The Trial Court erred in granting ... *Reynolds' Motion for Directed Verdict*

by finding, as a matter of law, that the sidewalk in front of ... [Reynolds' east-side store] is a public sidewalk, because the evidence was sufficient to make a submissible case on whether the lowered concrete area where Plaintiff was injured is private, rather than public, in that there was evidence that [City] has never accepted the lowered concrete area as a public walkway and that the public has not used the lowered concrete area." (Emphasis supplied.)

In sum, City argues that sufficient evidence was adduced to present a fact question as to the status of the accident site, i.e., whether the lowered concrete area had been dedicated to and accepted by the public or was a privately-owned area. With that as its premise, City avers the trial court erred in directing a verdict for Reynolds, apparently on the theory that leaving Reynolds in the lawsuit was the only way that the public or private status issue could be submitted to the jury. We disagree.

First, we note that Plaintiff never alleged or attempted to prove that the accident site was on private property or that Reynolds owed her the general duty owed invitees by property owners or possessors when invitees are on business premises.[3] Plaintiff apparently recognized what the record shows, namely, that the thing which caused her injury (the lowered concrete area with the hole in it) was not on Reynolds' property. Accordingly, Plaintiff tried to make a case against Reynolds by claiming Reynolds had either made a "special use" of a public sidewalk,

---

**3.** In Missouri, a property owner or possessor owes a general duty to invitees to exercise reasonable and ordinary care in making privately-owned premises safe. *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 903 [6] (Mo.App.1996). Generally, a person who seeks damages based on principles of premis-

es liability must prove that the thing that caused his or her injury was owned, possessed, occupied by, or within the control of the defending party. *McKeighan v. Kline's, Inc.*, 339 Mo. 523, 98 S.W.2d 555, 559 [5] (Mo.1936).

or by affirmative conduct they had negligently created a dangerous condition on the sidewalk.[4] She did this by alleging that "Reynolds or their predecessors in title of said Lot 5, designed, constructed, and built that part of the described sidewalk and step-down where plaintiff fell and was injured."

■ Whether Plaintiff was attempting by this allegation to invoke the "special use" exception, or was claiming Reynolds negligently and affirmatively created an artificially dangerous condition at the accident site, is not entirely clear. *See* n. 4. What is clear, however, is that the court found Plaintiff never proved her allegations and City has not challenged that finding on appeal. The court's findings, i.e., that Plaintiff did not prove Reynolds made a "special use" of the accident site or prove that Reynolds affirmatively acted to cause a dangerous condition in that area, provided a tenable basis for the trial court's implicit finding that Reynolds did not owe a duty to Plaintiff, and a tenable basis for sustaining Reynolds' motion for a directed verdict. "The granting of a directed verdict will not be reversed on appeal if it was correct for any reason." *Giles v. American Family Life Ins. Co.,* 987 S.W.2d 490, 493[2] (Mo.App.1999).

■ Under the circumstances, the trial court's finding that the concrete areas in front of Reynolds' property where Plaintiff fell "are, in fact, public sidewalks[ ]" is

merely surplusage, and any opinion by this court regarding such finding would be merely advisory. Appellate courts do not render advisory opinions or decide issues when it is unnecessary to do so because of the existence of a tenable basis for affirmance. *In re Estate of Looney,* 975 S.W.2d 508, 519 [29] (Mo.App.1998).

Second, we agree that if a fact issue did exist about the public/private status of the accident site (a decision we need not and do not make), a resolution of that question favorable to City would have absolved it of liability. *See* n. 4. City, however, never tendered an instruction that required the jury to decide that issue nor did City ever request that the trial court include the issue as part of Plaintiff's verdict-directing instruction. By not requesting that the trial court instruct on the issue, City waived any complaint with regard thereto. Rule 70.03, Supreme Court Rules (2001). Point I is denied.

*Point II: Dangerous Condition Existed As A Matter Of Law?*

City's final point maintains the trial court erred by refusing to direct a verdict in its favor because the holes in the lowered concrete area presented an open and obvious danger that Plaintiff could have avoided. City cites *Harris v. Niehaus,* 857 S.W.2d 222, 226[14] (Mo.banc 1993) (citing RESTATEMENT (SECOND) OF TORTS, § 343 (1965)), for the proposition that a landowner is entitled to expect its invitees

---

4. Ordinarily, a municipality has an affirmative non-delegable duty to maintain an improved public sidewalk once it is dedicated to public use and accepted by the municipality, *Dorlon v. City of Springfield,* 843 S.W.2d 934, 938–39 (Mo.App.1992), and a private land owner has no duty to the public to maintain or repair steps or sidewalks that are not on his property, even when such steps and sidewalks abut or serve the privately-owned property. *Hart v. City of Butler,* 393 S.W.2d 568, 582 [24] (Mo.1965); *Lange v. Wehrenberg The-* aters, Inc., 870 S.W.2d 880, 883 (Mo.App. 1993). Two exceptions to this rule exist. First, an abutting landowner may be held liable if he makes "special use" of the sidewalk, that is, uses the sidewalk for something other than affording the public an ingress and egress to the owner's property. *Dorlon,* 843 S.W.2d at 945. Another exception exists when the property owner, by affirmative conduct, acts negligently and artificially creates a dangerous condition. *Id.*

to exercise ordinary perception, intelligence, and judgment; discover an obvious condition; appreciate the risk presented; and to take the steps necessary to avert an accident.

In *Harris,* a mother left her young children unattended in a parked car that was facing downhill toward a lake, and the car rolled into the lake causing the children to drown. The children's parents sued the landowners, and contended they failed to warn about the danger of parking a car on the hill. A jury found for the parents, but the Supreme Court of Missouri reversed. Regarding the evidence, the *Harris* court noted the following:

> "The pictures of the scene of the accident, surveys of the scene, testimony by experts who had examined the scene, and Mrs. Harris' own recollection of the scene all inarguably reveal the degree of danger that was present. The lake is plainly visible from the parking place Mrs. Harris chose. The road obviously slopes down toward the lake, and the only visible barrier between the road and the lake are natural ones—a substantial number of trees. The distance from the parking place to the lake is less than 300 feet."

*Id.* at 226. On these facts, the court found that "[t]he natural condition on Lakepoint Drive [was] open and obvious as a matter of law." *Id.* at 227 [16]. In sum, the Court held that when "the danger is open and obvious as a matter of law and the risk of harm exists only if the plaintiff fails to exercise due care, the case is not submissible to the jury." *Id.* at 227 [17].

Arguably, there are two reasons why *Harris* is not controlling here. First, unlike *Harris,* City's liability was not predicated on its status as an owner or occupier of premises who owes a general duty to invitees to exercise reasonable and ordinary care in making the premises safe.

*See Morrison,* 929 S.W.2d at 903 [5]. Second, the allegedly defective condition in *Harris* was a natural condition, i.e., a hill leading down to a lake, whereas the defects here were not natural conditions. *See Privitera v. Coastal Mart, Inc.,* 908 S.W.2d 779, 781 (Mo.App.1995). However, we need not and do not decide if these distinctions make *Harris* inapposite. Even if the *Harris* analysis attends when it is alleged that a municipality has breached its affirmative duty to maintain an improved sidewalk—a notion that should not be ascribed to this opinion—this record does not compel a finding, as a matter of law, that the lowered concrete area had holes in it that were open and obvious to all who would encounter them.

■■■ "A condition is open and obvious if invitees should reasonably be expected to discover it." *Peterson v. Summit Fitness, Inc.,* 920 S.W.2d 928, 933 [12] (Mo.App.1996). Here, Plaintiff testified that as she approached the lowered area, she looked at where she was going to step and "noticed grass on it," but "did not see the hole" in the bottom of it because of "[a]ll the grass." Plaintiff's daughter Jennifer testified that on the day of the accident, the area was "very grassy." Continuing, Jennifer said: "I couldn't even tell there was a hole at the moment. I was trying to figure out what she stepped into." Photographs of the lowered concrete area, taken "shortly" after the accident, were in evidence as Exhibits 10, 24, and 25. These exhibits corroborated Plaintiff's testimony and that of her daughter about their inability to see the hole in the step. Specifically, the photographs showed a rounded area on the step, and within that rounded area, a thick growth of grass that had grown higher than the surrounding concrete surface and spread irregularly outward from the circumference of the circle, all of which effectively con-

cealed the existence of a hole. We are persuaded by this evidence that the hole was not open and obvious as a matter of law at the time of this accident.[5] Therefore, the issue of fault was properly one for the jury. *Privitera,* 908 S.W.2d at 782. The trial court did not err in denying City's motion for directed verdict or other post-trial motions. Point II denied.

The judgment of the trial court is affirmed.

5. We have not ignored City's argument that "pictures of the hole compel the conclusion that no one of 'ordinary perception, intelligence and judgment' would fail to recognize that the grass was growing out of a hole." There were photographs of the accident scene taken later than Exhibits 10, 24, and 25 that arguably support this contention. However, there was also uncontradicted evidence that Exhibits 10, 24, and 25 most accurately depicted the area as it existed at the time of accident.