**Marilyn Jennell DIETERICH, Appellant,**

v.

**John PICKETT, Respondent.**

**No. WD 61868.**

Missouri Court of Appeals, Western District.

June 17, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 29, 2003.

Application for Transfer Denied Sept. 30, 2003.

Fredrich J. Cruse, Hannibal, for Appellant.

John M. Hark, Hannibal, for Respondent.

Before ELLIS, P.J., LOWENSTEIN and HOLLIGER, JJ.

HAROLD L. LOWENSTEIN, Judge.

Marilyn Dieterich appeals from the circuit court's judgment granting summary judgment in favor of respondent John Pickett. Dieterich's petition alleged she was a business invitee and suffered substantial injuries and losses from a fall caused by a defective covering on a water

runoff pit at Pickett's self-service car wash. Dieterich asserts three points of error on appeal. Each of those points concern the trial court's determination that an open and obvious condition existed that relieved Pickett of his duty to protect her against such condition. She claims that there were insufficient facts to allow a finding of an open and obvious condition. She further claims that the trial court erred by failing to recognize the comparative fault standard to be applied post-*Gustafson v. Benda*[1] and failing to recognize that Pickett had a greater duty to business invitees, particularly as an operator of a self-service type of business, but because this court finds the condition of the grate was not open and obvious as a matter of law, the judgment is reversed and the cause remanded for further proceedings.

### Factual and Procedural History

On April 4, 1998, Marilyn Dieterich visited the Road Runner Car Wash in Kirksville, Missouri, which was then owned by John Pickett. Before entering into the car wash bay, Dieterich vacuumed her car. Since her floor mats were removed to vacuum, she walked them into the bay to hang on the hooks on the wall. Her car remained near the vacuum station. After hanging two mats on one of the walls, she turned around and began walking to the other wall to hang the remaining two mats. As she walked across the drainage grate in the floor of the car wash bay, her right foot fell through. As a result of the fall, Dieterich sustained injuries that resulted in a pin being placed in her arm and the partial loss of use of her arm.

Dieterich filed her petition alleging that Pickett negligently maintained his property and failed to post warning notices. She claimed that Pickett owed a duty to her as a business invitee to maintain his property in a safe condition and "to post warnings for any dangerous condition that was not blatantly obvious." In his answer, Pickett asserted as an affirmative defense that Dieterich was "comparatively negligent" in that "the condition of the grate was open and obvious and [Dieterich's] fall, if any, was a result of her complete inattention to her surroundings."

Pickett subsequently filed a motion for summary judgment asserting that "[t]he Grate at defendants place of business was of such 'open and obvious' nature that reasonable use of perception by Plaintiff would have revealed that the grate would have been dangerous to walk across." The trial court entered its Findings, Conclusions and Judgment granting Pickett's motion for summary judgment, finding that the dangerous condition was open and obvious and that Pickett had no duty to warn Dieterich of the condition. This appeal follows.

### Standard of Review

■ On appeal from the grant of a motion for summary judgment, this court's review is essentially de novo. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "[T]his court applies the same criteria as the trial court in determining whether summary judgment was properly granted." *Richardson v. QuikTrip Corp.*, 81 S.W.3d 54, 56 (Mo.App.2002). Only where there is no genuine issue of material fact and the movant is entitled to judgement as a matter of law will an entry of summary judgment be upheld. *Id.* The evidence and all reasonable inferences therefrom are reviewed in the light most favorable to the party against whom judgment was entered. *Id.* "Where the record reasonably supports any inference other

---

1. 661 S.W.2d 11 (Mo. banc 1983).

than those necessary to support a judgment for the movant, a genuine issue of material fact exists and the movant's motion for summary judgment should be overruled." *J.M. v. Shell Oil Co.,* 922 S.W.2d 759, 761 (Mo. banc 1996).

## Argument

■ While Dieterich's brief contains three separate points relied on, the crux of her argument is that the court erred in determining that the condition of the grate was open and obvious as a matter of law.[2] Thus, the question before this court is whether the condition of the grate was open and obvious.

In *Harris v. Niehaus,* 857 S.W.2d 222, 226 (Mo. banc 1993), the Missouri Supreme Court adopted Sections 343 and 343A(1) of the Restatement (Second) of Torts (1965). There the Court described the duty of care a possessor of land owes to invitees:

> [T]o meet the applicable standard of care a possessor of land must (1) exercise reasonable care; (2) disclose to the invitee all dangerous conditions which are known to the possessor and are likely not to be discovered by the invitee; and (3) see that the premises are safe for the reception of a visitor, or at least ascertain the condition of the land, to give such warning that the invitee may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.

*Id.* With respect to the second element, however, "when the condition is so open and obvious that the invitee should reason-

ably be expected to discover it and realize the danger, a possessor of land does *not* breach the standard of care owed to invitees 'unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Id.* (citing Restatement (Second) of Torts § 343A(1) (1965)).

In *Harris,* a mother left her three children unattended in her car that was parked on a gravel road facing downhill. *Id.* at 224. The road "descend[ed] in increasingly steep gradients" and a small lake lay one hundred fee from the end of the roadway. *Id.* The car rolled into the lake and all three children drowned. *Id.* at 225. The mother and father filed a wrongful death action against the subdivision, "alleging negligence in failure to warn of, or protect their children from, the unreasonably dangerous slope of" the road. *Id.* The jury awarded damages to the parents.[3] *Id.* The Supreme Court reversed, finding that the parents' case failed with respect to the second element. *Id.* at 226. The Court held "as a matter of law that the natural condition present ... was open and obvious to all who would encounter it." *Id.* In so holding, the Court noted:

> "The pictures of the scene of the accident, surveys of the scene, testimony by experts who had examined the scene, and Mrs. Harris' own recollection of the scene all inarguably reveal the degree of danger that was present. The lake is plainly visible from the parking place Mrs. Harris chose. The road obviously slopes down toward the lake, and the only visible barriers between the road and the lake are natural ones—a sub-

2. In fact, both parties provide arguments in their briefs that go beyond the actual findings and conclusions of the trial court, for example, whether Pickett performed proper maintenance and whether the car wash bay was being used in the normal manner for which it was designed. This court's decision will be limited to the findings and conclusions of the trial court with respect to the open and obvious condition of the grate.

3. The jury awarded a sum of $375,000 and found the mother 90% at fault and the subdivision 10% at fault.

stantial number of trees. The distance from the parking place to the lake is less than 300 feet."

In the case at bar, the trial court, after noting the relevant law, made the following findings and conclusions:

7. Plaintiff had frequented Defendant's car wash on many occasions, was familiar with Defendant's premises, and knew of the existence of the drainage grate in the car wash bay at the time she was injured.

8. The drainage grate in Defendant's car wash bay, which is the allegedly dangerous condition about which Plaintiff complains, was open and obvious and well know to Plaintiff, and Defendant had no duty to warn Plaintiff of such condition, or otherwise protect Plaintiff from such condition, and Plaintiff assumed the risk of injury from the condition.

This court does not agree that as a matter of law the condition of the grate was an open an obvious danger that was well known to Dieterich. While Dieterich stated in her deposition and in her answers to interrogatories that "I guess I knew [the grate] was there" and "I suppose I did notice there was a grate in the floor" and stated that she had been to the car wash *numerous time, these statements do not necessarily support a finding that the dangerous condition of the grate was open and obvious. The trial court and Pickett are confusing the issue of whether the existence or the condition of the grate caused Dieterich to fall. Dieterich is not alleging that the mere existence of the grate caused her to fall, but the condition of the grate did so. C.f. Parker v. Nat'l SuperMkts., Inc.*, 914 S.W.2d 30, 32 (Mo.App. 1995) (holding that it was not error to fail to give instruction on open and obvious condition where evidence established that movement of metal plate on loading dock,

not its presence alone, caused the injuries). In fact, in her answers to interrogatories, she states, in response to the question of whether there was any defect, dangerous condition, or other condition which caused the alleged fall, that "[t]he grate railings were either spaced too far apart, or one of the railings was broken, and my leg went right through it."

Here, unlike in *Harris*, and under review here of the granting of summary judgment in a negligence suit, there is simply no evidence that Dieterich knew of the existence of the dangerous condition until after she fell through the grate. Dieterich stated that she walked into the empty car wash bay to hang up her car's floormats. After hanging two on one wall, she turned to hang the other two on the opposite wall. While she did indicate that she was not necessarily watching the ground, it was a jury question whether the wide space in the grate should have been discovered by plaintiff prior to her fall. See *Harris*, 857 S.W.2d at 226. The grate was located in the center of the car wash bay. Arguably, the grate was located at a lower point in the car wash bay, which may have prohibited a person from ascertaining its condition until he or she was directly upon the grate, at which time it could be too late.

Furthermore, Pickett's own argument and statements establish that even he was not aware of a dangerous condition. In his memorandum in support of summary judgment, Pickett stated that "he was not aware of the broken grate." Further, he stated that he checked every car wash bay every morning and throughout the day and, in fact, checked the bays on the day in question. He indicated that he "walked on grates on a regular basis." If all this were true and Pickett was not aware of the condition of the grate, then by his own statements an inference can be made that

the condition of the grate was not open and obvious. *See e.g., Bartel v. Cent. Mkts., Inc.,* 896 S.W.2d 746, 748 (Mo.App. 1995) (finding that the trial court erred in holding uneven sidewalk in front of grocery store was open and obvious where neither the invitee nor the manager of the store had noticed the uneven condition).

Because this court holds that the condition of the grate was not open and obvious as a matter of law, Pickett was not entitled to summary judgement. The judgment of the trial court is reversed and the cause remanded for further proceedings.

All concur.