

# In the Missouri Court of Appeals
# Eastern District

**DIVISION ONE**

|  |  |  |
|---|---|---|
| PATRICIA ANSLINGER, | ) | No. ED111387 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Saint Louis County |
| vs. | ) | 20SL-CC00821 |
| | ) | |
| CHRISTIAN HOSPITAL | ) | |
| NORTHEAST-NORTHWEST, | ) | Honorable Dean P. Waldemer |
| | ) | |
| Appellant. | ) | Filed:  January 23, 2024 |

Christian Hospital Northeast-Northwest (the "Hospital") appeals the judgment entered upon a jury verdict in favor of Patricia Anslinger ("Plaintiff") on her personal injury claim arising out of Plaintiff's trip and fall as she walked through the Hospital's vestibule.  The trial court's judgment entered upon the jury's verdict awarded Plaintiff $97,500 in damages, $2,644.74 in statutory court costs, and post-judgment interest.  We affirm.

## I.   BACKGROUND

On January 9, 2019, Plaintiff drove her friend to the Hospital for a visit with the friend's husband who was taken there the prior night.  After parking her car, Plaintiff and her friend approached the Hospital's entrance and passed through an initial set of sliding doors and into a vestibule leading to the Hospital.  The vestibule floor was partially covered by several heavy rubber mats sitting on top of the carpet.  As Plaintiff walked through the vestibule, her feet caught on a protruded edge of one of the rubber mats, causing Plaintiff to trip and fall to the

floor. After being helped up, Plaintiff continued with her visit to the Hospital.

Plaintiff subsequently brought a personal injury claim against the Hospital on a theory of premises liability. Plaintiff's petition alleged the Hospital had a duty to keep its premises in a reasonably safe condition, and it failed to use ordinary care when it did not address and remedy the unsafe condition of the floor mat in the vestibule or warn Plaintiff of the potential trip hazard created by the mat. The petition further alleged that the Hospital's negligence directly and proximately resulted in Plaintiff's injuries, including a torn rotator cuff, pain and suffering, medical bills and expenses, and impairment of her daily activities.

A three-day jury trial took place in October 2022. At trial, a photograph was admitted depicting the vestibule before Plaintiff entered, which showed a slight fold at the point where two of the floor mats converged. Video footage of Plaintiff's trip and fall was also admitted at trial and played for the jury. Plaintiff testified that although she realized there were rubber mats on the floor, she never saw the fold in the mat that ultimately caused her to trip and fall. While responding to questioning on cross-examination, Plaintiff stated she was unable to see the fold in the mat because she was not "looking straight down," and further agreed with opposing counsel that had she been looking down, she would have seen the fold in the mat because it was "open and obvious."

At the close of Plaintiff's evidence and again at the close of all the evidence, the Hospital moved for a directed verdict on the grounds that, *inter alia*, the condition of the floor mat in the Hospital's vestibule was open and obvious as a matter of law. The trial court denied both motions for directed verdict. The jury returned a verdict attributing sixty-five percent of the fault to the Hospital and the remaining thirty-five percent to Plaintiff. The jury assessed the total damages at $150,000, resulting in an award of $97,500 in damages in favor of Plaintiff.

Subsequently, the Hospital timely filed a motion for judgment notwithstanding the verdict ("JNOV") in accordance with its prior motions for directed verdict. After briefing by both parties, the trial court heard oral argument on the matter and subsequently denied the Hospital's motion for JNOV. The trial court entered a judgment upon the jury's verdict awarding Plaintiff $97,500 in damages, $2,644.74 in statutory court costs, and post-judgment interest. This appeal followed.

## II.    DISCUSSION

The Hospital's sole point on appeal argues the trial court erred in denying its motions for directed verdict and its motion for JNOV because the dangerous condition of the rubber floor mat over which Plaintiff tripped was open and obvious as a matter of law.

### A.    Standard of Review and General Law

The standards of review for the denial of a motion for directed verdict and the denial of a motion for JNOV are essentially the same. *Keveney v. Missouri Military Academy*, 304 S.W.3d 98, 104 (Mo. banc 2010). To defeat either motion, the plaintiff must put forth a submissible case by offering substantial evidence to support every element necessary for a finding of liability. *Id*. Whether the plaintiff's case was submissible is a question of law subject to *de novo* review. *Ellison v. Fry*, 437 S.W.3d 762, 768 (Mo. banc 2014). This Court views the evidence in the light most favorable to the verdict, and we give the plaintiff the benefit of all reasonable inferences, disregarding all conflicting evidence and inferences. *Keveney*, 304 S.W.3d at 104. We will reverse the jury's verdict only in the complete absence of probative facts to support the jury's conclusion. *Id*.

Liability in a negligence action only exists when the defendant's conduct falls below the applicable standard of care required to protect others from unreasonable risk of harm and when

3

such conduct proximately causes injury to the plaintiff. *Harris v. Niehaus*, 857 S.W.2d 222, 225 (Mo. banc 1993). The applicable standard of care in each case is a question of law for the courts, and whether the defendant falls below that standard of care is a factual question for the jury. *Id*. However, a case is not submissible to a jury when no evidence exists to support a finding that the defendant fell below the applicable standard of care. *Id*.

When a plaintiff files a premises liability claim against a possessor of land for injuries sustained due to an unreasonably dangerous condition on the land, the relationship between the parties defines the applicable standard of care. *Id*. The parties to this case do not dispute Plaintiff's status as an invitee on the Hospital's land for purposes of the present appeal. When the plaintiff is an invitee, a possessor of land is liable for injuries to the plaintiff caused by a condition on the land only if the possessor:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees[;] and
>
> (b) should expect that they will not discover or realize the danger or will fail to protect themselves against it[;] and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Id*. at 225-26 (citation omitted). Therefore, to meet the applicable standard of care, a possessor of land is required to:

> (1) exercise reasonable care; (2) disclose to the invitee all dangerous conditions which are known to the possessor and are likely not to be discovered by the invitee; and (3) see that the premises are safe for the reception of a visitor, or at least ascertain the condition of the land, to give such warning that the invitee may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.

*Id*. at 226 (citation omitted).

4

**B.** **The Hospital's Argument That the Condition of the Floor Mat Was Open and Obvious as a Matter of Law**

When a dangerous condition "is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger, a possessor of land does *not* breach the standard of care owed to invitees unless the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* (citation and internal quotations omitted) (emphasis in original). "This element acknowledges that a possessor of land is not an absolute insurer of the well-being of its invitees." *Id.* Accordingly, a possessor of land does not fall below the applicable standard of care for failing to protect an invitee from a condition that is open and obvious as a matter of law. *Id.*

The Hospital argues the condition of the floor mat at issue in this case was open and obvious as a matter of law, an argument based in large part on the following exchange from Plaintiff's cross-examination at trial:

| | |
|---|---|
| [Opposing Counsel:] | You saw those mats as you were walking up to the vestibule . . . correct? |
| [Plaintiff:] | Yes. |
| [Opposing Counsel:] | And is it your testimony that you were unable to see this fold in the mat? |
| [Plaintiff:] | No, because you don't – I wasn't walking looking straight down. |
| [Opposing Counsel:] | Had you been looking straight down, you would have seen this because this is open and obvious, right? |
| [Plaintiff:] | Yes. |

Based on the above statements and corroborating testimony from Plaintiff's friend who witnessed the incident, the Hospital argues the condition of the mat which Plaintiff tripped upon was open and obvious as a matter of law because: (1) the evidence showed Plaintiff explicitly

5

agreed the condition was "open and obvious"; (2) the evidence showed that had Plaintiff been looking straight down as she walked, she would have seen the fold in the mat, and there was nothing which prevented her from doing so; and (3) the Western District's decision in *Crow v. Kansas City Power & Light Co.*, 174 S.W.3d 523 (Mo. App. W.D. 2005), is instructive in this case.[1] For the reasons discussed below, we disagree with the Hospital's arguments and hold the condition of the floor mat which Plaintiff tripped upon was not open and obvious as a matter of law.

1.       **The Evidence Showing Plaintiff May Have Conceded the Fold in the Floor Mat Was "Open and Obvious"**

We begin by addressing the Hospital's implication that Plaintiff's potential concession on cross-examination that the fold in the floor mat was "open and obvious" should persuade this Court to find the floor mat's condition was open and obvious as a matter of law. As the Hospital correctly notes multiple times in its brief, whether an allegedly dangerous condition "is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger" is a question of law. *Harris*, 857 S.W.2d at 226. Importantly, to the extent Plaintiff's testimony may have conceded the fold in the floor mat was "open and obvious," "[c]ourts are not bound by stipulations or concessions as to questions of law." *Parr v. Breeden*, 489 S.W.3d 774, 779 (Mo. banc 2016). Therefore, any concession by Plaintiff on cross-examination is not binding on this Court when determining whether the fold in the floor mat was open and obvious as a matter of

---

[1] The Hospital also argues there was no evidence indicating it knew about the condition of the floor mat at issue or should have anticipated any harm to Plaintiff or any other invitee. Because the Hospital's sole point relied on claims the condition of the floor mat was open and obvious as a matter of law, this argument would only be relevant in applying the exception to the open and obvious doctrine. *See Harris*, 857 S.W.2d at 226 (holding that when a court finds a dangerous condition *was* open and obvious as a matter of law, "a possessor of land does not breach the standard of care owed to invitees unless the possessor should [have] anticipate[d] the harm despite such knowledge or obviousness") (citation and internal quotations omitted) (emphasis omitted). Because we hold the floor mat's condition *was not* open and obvious as a matter of law, we need not address the Hospital's argument regarding the exception.

law.  *See id.*; *see also Hoffmeier v. Civil Service Commission of St. Louis Metropolitan Sewer District*, 541 S.W.3d 8, 12 (Mo. App. E.D. 2017) (holding that testimony which constitutes a legal conclusion is "neither binding on [the plaintiff] nor competent and substantial evidence").

Additionally, other evidence was presented at trial which contradicted Plaintiff's statements on cross-examination and tended to show the fold in the floor mat was not "open and obvious."  Viewing this evidence and the reasonable inferences therefrom in the light most favorable to the jury's verdict in favor of Plaintiff, and disregarding all conflicting evidence and inferences, *Keveney*, 304 S.W.3d at 104, the record contains: video and photographic evidence demonstrating the fold in the floor mat was small and could have been easily overlooked; testimony from both Plaintiff and her friend who witnessed the trip and fall stating they did not notice anything unusual as they approached and entered the vestibule; video evidence showing a motorized wheelchair moving across the vestibule just a few seconds prior to Plaintiff's entry which could have partially obscured her view of the floor mat at issue; and a photograph of Plaintiff right before her fall indicating she was looking down at the area near the fold in the mat which caused her to trip.  This evidence supports a finding that Plaintiff put forth a submissible case.  *See id.*; *cf. Harris*, 857 S.W.2d at 226 (describing a condition to be open and obvious as a matter of law when "the invitee should reasonably be expected to discover it and realize the danger").

2. **The Evidence Showing That Had Plaintiff Been Looking Down, She Would Have Seen the Fold in the Floor Mat**

The Hospital also argues the floor mat's condition was open and obvious as a matter of law because Plaintiff agreed on cross-examination that "[h]ad [she] been looking straight down, [she] would have seen [the fold in the floor mat]."  Relatedly, the Hospital argues that nothing prevented Plaintiff or anyone else from seeing the floor mat's condition, or in other words,

7

nothing obscured an observer's view of the fold in the floor mat. In its reply brief, the Hospital further elaborates on this argument and contends the testimony from Plaintiff, i.e., that she would have seen the fold in the mat had she looked down, distinguishes this case from prior Missouri cases holding factually similar conditions leading to a trip and fall were not open and obvious as a matter of law.

The Hospital is correct to the extent it argues that *some* prior Missouri cases holding a condition was not open and obvious as a matter of law involved evidence of conditions which were arguably concealed or obscured and likely could not have been seen by the plaintiff, even if he or she had been looking down. *See, e.g., Lacy v. Wright*, 199 S.W.3d 780, 781, 784 (Mo. App. E.D. 2006) (concrete or asphalt parking bumper matching the color of the parking lot and partially covered with snow); *Eide v. Midstate Oil Co.*, 895 S.W.2d 35, 38-39 (Mo. App. W.D. 1995) (portion of a fence partially buried beneath grass and weeds). However, in many other instances, Courts have also held a condition not to be open and obvious as a matter of law in the face of evidence indicating the condition was plainly visible and could have been seen by the plaintiff had he or she been looking down. *See, e.g., Smith v. The Callaway Bank*, 359 S.W.3d 545, 546-47, 549 (Mo. App. W.D. 2012) (several coin-sized lava rocks scattered on a sidewalk); *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 901, 904 (Mo. App. E.D. 1996) (briefcase on the floor of a hallway); *Privitera v. Coastal Mart, Inc.*, 908 S.W.2d 779, 780, 782 (Mo. App. W.D. 1995) (numerous marble-sized pits on the surface of a concrete parking lot); *Bartel v. Central Markets, Inc.*, 896 S.W.2d 746, 747-48 (Mo. App. E.D. 1995) (uneven slabs of concrete on a sidewalk, which the plaintiff noticed upon later examining the location of her fall).

In sum, prior Missouri holdings demonstrate that simply because a defendant presents evidence indicating a plaintiff *could have* seen an unobscured dangerous condition does not

mean the condition is necessarily open and obvious as a matter of law. *See id*. Moreover, whether an invitee fails to keep a careful lookout and notice potentially dangerous conditions, either obscured or openly visible, is a question for the finder of fact to answer at trial when allocating fault under Missouri's comparative fault principles. *Lacy*, 199 S.W.3d at 784; *Morrison*, 929 S.W.2d at 905. Likewise, the obviousness of the dangerous condition is also a factor for the jury to consider when evaluating comparative fault. *Morrison*, 929 S.W.2d at 905. After assessing the evidence presented in this case, the jury calculated Plaintiff's fault at thirty-five percent, presumably due, at least in part, to Plaintiff's failure to keep a careful lookout and notice the visible fold in the floor mat over which she tripped. *See id*.

3. **The Hospital's Argument Under *Crow* and Our Holding That the Condition of the Floor Mat was Not Open and Obvious as a Matter of Law**

The Hospital primarily relies upon *Crow*, 174 S.W.3d 523, in making its argument that the condition of the floor mat was open and obvious as a matter of law.[2] In *Crow*, a painter working at an apartment complex was killed after an aluminum ladder he was moving came into contact with an overhead electric power line. *Id*. at 526. In affirming the trial court's grant of summary judgment in favor of the defendants, the Court held the danger was open and obvious as a matter of law because the decedent reasonably should have seen the power line and avoided it when moving his ladder. *Id*. at 534-39. In relying on *Crow* in this case, the Hospital specifically highlights testimony from the decedent's employer in *Crow* where he agrees there was nothing which concealed the overhead power line or prevented anyone from seeing it. *Id*. at 535-36.

---

[2] In its brief on appeal, the Hospital also cites to *Landers v. Aldi, Inc.*, 153 F.3d 698 (8th Cir. 1998), along with several decisions from appellate courts outside of Missouri. Appellate decisions from lower federal courts and other states are not binding on this court. *State v. Mack*, 66 S.W.3d 706, 710 (Mo. banc 2002); *Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 719 (Mo. App. E.D. 2020); *see also Smith*, 359 S.W.3d at 548.

We find *Crow* factually distinguishable from this case. The overhead power line at issue in *Crow* was a "regular condition of land and . . . a large physical structure," which particularly lends itself to a finding of open and obvious as a matter of law and is readily distinguishable from the condition at issue in this case. *See Holzhausen v. Bi-State Development Agency*, 414 S.W.3d 488, 496 (Mo. App. E.D. 2013); *Smith*, 359 S.W.3d at 548-49. In contrast to the power line in *Crow*, the dangerous condition here is a relatively small fold between rubber floor mats, which is by its nature a condition that is less obvious and more easily overlooked. *See Holzhausen*, 414 S.W.3d at 496. Missouri cases involving a trip hazard on a walking surface are far more applicable to the facts here, and such cases have consistently held these types of dangerous conditions are not open and obvious as a matter of law. *See, e.g., Smith*, 359 S.W.3d at 546-47, 549 (several coin-sized lava rocks scattered on a sidewalk); *Lacy*, 199 S.W.3d at 781, 784 (concrete or asphalt parking bumper matching the color of the parking lot and partially covered with snow); *Morrison*, 929 S.W.2d at 901, 904 (briefcase on the floor of a hallway); *Privitera*, 908 S.W.2d at 780, 782 (numerous marble-sized pits on the surface of a concrete parking lot); *Bartel*, 896 S.W.2d at 747-48 (uneven slabs of concrete on a sidewalk); *Eide*, 895 S.W.2d at 38-39 (portion of a fence partially buried beneath grass and weeds).[3]

Conversely, the overhead power line in *Crow* is consistent with other Missouri cases involving "a natural or regular condition of land . . . or a large physical structure," *Smith*, 359 S.W.3d at 548, which have held these types of dangerous conditions to be open and obvious as a matter of law. *See, e.g., Harris*, 857 S.W.2d at 224-27 (street sloping downhill towards a lake);

---

[3] *See also Stewart v. Reynolds*, 84 S.W.3d 569, 571, 574-75 (Mo. App. S.D. 2002) (hole in a crosswalk area obscured by grass); *Lewis v. Snow Creek, Inc.*, 6 S.W.3d 388, 391-93 (Mo. App. W.D. 1999) (ice on a ski slope); *Smith v. Wal-Mart Stores, Inc.*, 967 S.W.2d 198, 202-04 (Mo. App. E.D. 1998) (puddle of water on the floor of a vestibule, which the plaintiff noticed after her fall) (overruled on separate grounds by *Badahman v. Catering St. Louis*, 395 S.W.3d 29, 40 (Mo. banc 2013)).

*Holzhausen*, 414 S.W.3d at 491, 496, 497 (embankment with a twenty-to-thirty foot drop, impeded by two large metal pipes); *Heffernan v. Reinhold*, 73 S.W.3d 659, 662, 666 (Mo. App. E.D. 2002) (twelve-foot deep and fifteen-foot wide ditch); *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 83-84, 88 (Mo. App. E.D. 1999) (snow-covered hill with trees at the bottom); *Seymour v. Lakewood Hills Ass'n*, 927 S.W.2d 405, 407, 410 (Mo. App. E.D. 1996) (tree located in the middle of a road).

Under the specific facts of this case involving a trip hazard on a walking surface rather than "a natural or regular condition of land . . . or a large physical structure," we find the Hospital's reliance on *Crow* is misplaced. *See Smith*, 359 S.W.3d at 548-49. Moreover, pursuant to the prior Missouri holdings involving a trip hazard on a walking surface set out above, and viewing the facts of this case in a light most favorable to the verdict in Plaintiff's favor, *Keveney*, 304 S.W.3d at 104, we hold the fold in the Hospital's floor mat was not open and obvious as a matter of law. In other words, we hold that Plaintiff should not have reasonably been expected to discover the condition of the floor mat which she tripped upon and recognize its potential danger. *See Harris*, 857 S.W.2d at 226 (describing a condition to be open and obvious as a matter of law when "the invitee should reasonably be expected to discover it and realize the danger").

## C.      Conclusion as to the Hospital's Sole Point on Appeal

Based on the foregoing, the trial court did not err in denying the Hospital's motions for directed verdict and its motion for JNOV. The Hospital's sole point on appeal is denied.

### III. CONCLUSION

The judgment entered upon the jury's verdict in favor of Plaintiff on her personal injury claim is affirmed.

_____
ROBERT M. CLAYTON III, Presiding Judge

Philip M. Hess, J., and
Cristian M. Stevens, J., concur.