James HUXOLL, Appellant,

v.

McALISTER'S BODY & FRAME, INC., Respondent.

No. WD 62218.

Missouri Court of Appeals, Western District.

March 16, 2004.

James M. Roberts, Blue Springs, MO, for appellant.

Lance Wolf LeFevre, Kansas City, MO, for respondent.

Before VICTOR C. HOWARD, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

PER CURIAM.

James Huxoll sued McAlister's Body & Frame, Inc. ("Body Shop") for injuries he sustained while visiting McAlister's shop for the purpose of servicing his vending machines. Huxoll suffered the injuries when he opened a locked back door and attempted to step over a pile of scrap metal. The trial court directed a verdict in favor of the Body Shop. Huxoll appeals arguing that he made a submissible case. We affirm.

## Factual Background

The facts are recited in a light favorable to the plaintiff. *Thong v. My River Home Harbour, Inc.*, 3 S.W.3d 373, 377 (Mo.App. 1999). James Huxoll owned a company that provided vending machines to various businesses, including McAlister's Body Shop. On August 15, 2000, Huxoll visited the Body Shop to service his machines. At the south side of the building are six bay doors (or garage-style doors) and one regular-type hinged door. Cars in need of service are driven in and out of the bay doors. Delivery-truck drivers enter through the south side of the shop, while customers enter through the office located on the north side. When visiting the shop, Huxoll generally used the hinged door at the south end to exit and enter the building. On this occasion, Huxoll chose to enter through one of the bay doors.

Inside the building, Huxoll walked to the storage room that contained the vending machines. A short time later, Huxoll sought to exit the building. This time he elected to exit through the hinged door because there was only about six inches of clearance at the closest bay door, and two or three of the bay doors were blocked by cars. Huxoll walked to the hinged door, which he found was locked. He unlocked the deadbolt and opened the door. He observed a pile of sheet metal that began about six inches from the door and was up to a foot in height. Body Shop employees had placed scrap metal in the vicinity of this locked door.

The pile was not barricaded. Huxoll attempted to walk over or around the pile. In the process, he cut his Achilles tendon on one of the sharp pieces of metal. De-

spite the pain, Huxoll reentered the building through the first bay door, "squeezing by" a car in the doorway. He informed the McAlisters of his injury and was taken to the hospital.

Upon a theory of premises liability, Huxoll brought suit against the Body Shop. At the close of Huxoll's evidence, the Body Shop moved for a directed verdict, and the trial court granted the motion. Huxoll then filed a motion for a new trial, which the trial court denied. This appeal follows.

### Analysis

In his sole point on appeal, Huxoll argues that the trial court erred when it directed a verdict in favor of the Body Shop.

■ Our review of a verdict directed in favor of a defendant is limited to whether the plaintiff made a submissible case. *Giles v. Am. Family Life Ins. Co.,* 987 S.W.2d 490, 493 (Mo.App.1999). We view the evidence and all reasonable inferences in the light most favorable to the plaintiff. *Thong,* 3 S.W.3d at 377. Directing a verdict is a drastic measure. *Schumacher v. Barker,* 948 S.W.2d 166, 168 (Mo.App. 1997). Therefore, we affirm the trial court's ruling only if the evidence is so strongly against the plaintiff that it leaves reasonable jurors no room to differ. *Peterson v. Summit Fitness, Inc.,* 920 S.W.2d 928, 931 (Mo.App.1996).

■ When a plaintiff sues a possessor of land for injuries caused by an unreasonably dangerous condition, the standard of care owed by the possessor of land depends upon the status of the plaintiff at the time of the accident. *Cochran v. Burger King Corp.,* 937 S.W.2d 358, 361 (Mo.App.1996). The parties agree that Huxoll was an invitee when he visited the Body Shop to service his machines. A

landowner is liable to an invitee who has been injured by a condition on the land if the landowner:

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Harris v. Niehaus,* 857 S.W.2d 222, 225–26 (Mo. banc 1993). The second element is at issue in this case.

■ Under the second element, a possessor of land has no duty to protect invitees from dangers that are open and obvious as a matter of law. *Peterson,* 920 S.W.2d at 933. There is, however, one exception. A duty exists if a landowner should anticipate the harm despite the obviousness of the risk. *See Smith v. Wal-Mart Stores, Inc.,* 967 S.W.2d 198, 204–05 (Mo.App.1998) (holding that even if the wet floor was an obvious risk, Wal-Mart should have anticipated the harm because a customer had already notified employees that she slid on the water).

■ Huxoll virtually concedes that the scrap metal was an open and obvious danger. He argues, nonetheless, that the Body Shop should have anticipated that an invitee would attempt to go through the locked door and go over the sheet metal. Thus, Huxoll contends, the Body Shop had a duty to protect him from the danger. We disagree.

■ Landowners are entitled to expect that their invitees will exercise due care. *See Harris,* 857 S.W.2d at 226. Due care mandates that invitees take available precautions to protect themselves from

open and obvious dangers. *Id.* The exception to the "open and obvious danger" rule applies where a landowner should foresee that invitees, even if using reasonable care, would not appreciate the danger associated with the risk or would be unable to protect themselves from it. *Id.* at 227; *Hellmann v. Droege's Super Mkt., Inc.,* 943 S.W.2d 655, 658–59 (Mo.App.1997). The facts here do not fit within this exception.

In this case, Huxoll testified that he decided to exit through the locked door because two or three of the six garage doors were blocked. He observed the pile of car parts, which he noticed had sharp edges. Huxoll, in any event, could have used an open bay door or he could have asked one of the Body Shop employees to clear one of the blocked bay doors. Or he could have used the regular door at the north side of the shop. Instead, he went through the locked door and attempted to "get around" the pile of sharp metal.

■■■ Where the risk of harm from an open and obvious condition exists solely due to the plaintiffs' failure to exercise due care, the defendant is entitled to judgment as a matter of law. *Peterson,* 920 S.W.2d at 934; *Harris,* 857 S.W.2d at 227. Here, Body Shop argues that the metal pieces, which were stacked behind a locked door, presented no risk of harm to invitees using reasonable care. Body Shop also argues that its management was reasonably entitled to assume that any person entering or exiting through the back of the business would observe the pile of scrap metal and would not attempt to use that door since other doors were available.

Huxoll contends that the Body Shop should have expected that its invitees would open the locked door at the south end of the building. Huxoll fails to articulate why the Body Shop should have expected that its invitees would be unable to protect themselves from the obvious danger presented by sharp metal. *Harris* is analogous. In *Harris,* the plaintiff parked her car on a steep hill and left her children in the car unattended. 857 S.W.2d at 224–25. The car rolled down the roadway and into a lake located at the bottom of the hill, and the children drowned. *Id.* at 225. Our Supreme Court held that the landowners could reasonably rely on "the normal sensibilities" of drivers to recognize the risk presented by the slope of the road and take "the simple means at their disposal" to prevent any tragedy from occurring. *Id.* at 227. Body Shop argues here that it could reasonably rely on the normal sensibilities of its invitees to, at the very least, discover the scrap metal, appreciate its danger, and take "the simple means at their disposal" to avoid it.

Huxoll relies on two cases in which the court held that the plaintiff made a submissible case despite the existence of an open and obvious danger. In *Peterson,* a nine-year old girl was injured when she fell from a concrete wall that formed one side of the fitness center's swimming pool. 920 S.W.2d at 931–32. A deck surrounded three sides of the pool, but the fourth side (from which the girl fell) was unprotected. *Id.* While the danger was generally open and obvious, it would not be open and obvious to someone in the pool who might attempt to pull themselves out of the pool at that point and sit on the (anticipated) pool deck. Because the fitness center knew that children used the pool and may not appreciate the danger posed by the design of the pool, this court held that the fitness center should have anticipated the harm. *Id.* at 935. This case is distinguishable from *Peterson* in that it does not involve a child plaintiff. Also, in this case, the pile of scrap metal was at all times open and obvious.

In *Hellmann v. Droege's Super Market, Inc.,* the risk presented by an icy parking

lot was open and obvious. The court held that, nevertheless, the defendant should have anticipated that, in spite of the obvious risk, people would try to traverse the parking lot to accomplish their shopping. 943 S.W.2d at 659. Therefore, the store had a duty to anticipate the risk of harm caused to its customers by an icy parking lot and to exercise reasonable care to protect customers. *Id.* Thus, the trial court erred in granting a directed verdict to defendant on the basis that the risk was open and obvious. This case is distinguishable from *Hellmann* in that here any vendor or delivery person attempting to enter or leave through the back of the business had bay doors that could be accessed for ingress and egress.

Although Huxoll found that "two or three" of the six bay doors were blocked, there is no evidence in the record to the effect that the Body Shop should have anticipated that someone would "try to get around" the pile of scrap metal rather than using one of the remaining open doors. Instead, the record establishes that the Body Shop owner would reasonably have anticipated that Huxoll had other ways to exit the building besides this door. Under these facts, the Body Shop could not, as a matter of law, reasonably anticipate that an invitee would open the locked door, recognize the danger of the sharp metal, and still attempt to "get around" it.

 "[A] possessor of land is not an absolute insurer of the well-being of its invitees." *Harris*, 857 S.W.2d at 226. Where there is an open and obvious danger, liability can turn on whether a landowner can reasonably rely on its invitees to protect themselves from the danger. *Id.* This is not a case involving young children or a person who might otherwise be expected to lack reasonably prudent judgment. We conclude as a matter of law that the Body Shop's assumption that an

invitee such as Huxoll would not attempt to unlock the door and go over the scrap metal was not unreasonable. Huxoll, therefore, failed to present a submissible case.

### Conclusion

We affirm the judgment.