Julie HOLZHAUSEN,
Plaintiff/Appellant,

and

Dale Holzhausen, Plaintiff,

v.

BI–STATE DEVELOPMENT AGENCY,
d/b/a Metro, and St. Louis Cardinals,
L.L.C., Defendants/Respondents,

and

David Mason & Associates, Defendant.

No. ED 98252.

Missouri Court of Appeals,
Eastern District,
Division Two.

Aug. 13, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 8, 2013.

Application for Transfer Denied
Dec. 24, 2013.

Patrick J. Hagerty, Kaitlin A. Bridges, St. Louis, MO, for appellant.

Denis C. Burns, Kortenhof, McGlynn & Burns, LLC, St. Louis, MO, for respondent Bi–State.

Thomas B. Weaver, Jay A. Summerville, Darryl M. Chatman, Armstrong Teasdale LLP, for respondent St. Louis Cardinals, L.L.C.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff, Julie Holzhausen, appeals from the entry of separate summary judgments in favor of defendants Bi–State Development Agency (Metro) and St. Louis Cardinals, L.L.C. (the Cardinals) in her premises liability lawsuit to recover damages for personal injuries suffered when she slipped and fell from an embankment owned by the Cardinals onto the below-grade Metrolink light rail track area operated by Metro.

In her lawsuit, plaintiff alleged that Metro operated the Metrolink track line, that the Cardinals owned and operated a stadium and property around the stadium, and that defendant David Mason & Associates (Mason) performed work on the "new" Busch stadium. She alleged that when defendants constructed the new Busch stadium, they failed to fence or barricade a grassy area south of Spruce Street that bordered a ledge with a twenty-to-thirty foot drop to the Metrolink tracks. She further alleged:

> 12. Defendants, and each of them, knew or could have known that the grassy area and surrounding structures, pipes and appurtenances south of Spruce Street and west of the stadium, were not reasonably safe and that a person using ordinary care for her own safety could not reasonably be expected to discover the dangerous condition.

She also alleged that on October 29, 2006, after the Cardinals won the 2006 World Series, she attended the St. Louis Cardinals parade and rally near Spruce Street, and as a direct result of defendants' negligence, she slipped and fell, suffering bodily injuries.

The Cardinals filed a motion for summary judgment. As grounds for its motion, the Cardinals contended it was entitled to summary judgment because plaintiff could not produce evidence sufficient to allow a trier of fact to find the element of duty in plaintiffs negligence case either because plaintiff was a trespasser, or because the dangerous condition was open and obvious. Metro filed a motion for summary judgment on the same grounds.

The following facts, relevant to the "open and obvious" issue, were uncontroverted for purposes of the summary judgment motions. The area from which plaintiff fell was the Cardinals's property. The property below the ledge was a right of way owned by Metro. While on the Cardinals's property, plaintiff approached two metal pipes located near the ledge. The pipes impeded plaintiff's ability to get to the area where she ended up. Plaintiff went under one pipe and over the other pipe. Plaintiff had both feet on the ground after climbing over the second pipe and was starting to take a step when someone bumped into her, She then lost her balance and fell. Plaintiff admitted she gave the following responses to the following questions:

Q. Did you make any effort when you stood on your feet after you had come over the pipe, knowing that you had just come over a bridge, to determine what it was that the bridge was spanning?

A. No.

Q. Can I ask you why you did not?

A. I was very distracted by all the people and what was going on in the street and the parade.

\* \* \*

Q. As you climbed over the silver pipe, did you notice the fall-off?

A. I did not. I got distracted. I heard somebody say, "Here comes Tony LaRussa on the beer wagon." That's why I went to see him. I looked toward

the street and not behind me, and so I never did see that it was open there, no.

\* \* \*

Q. Do you believe that there was anything that obstructed your view from where you were standing on your feet on the earth and/or mulch and the railroad right-of-way?

A. No.

Defendants included photographs as exhibits in their summary judgment motion of the area where plaintiff was standing when she fell. These photographs show a large, horizontal beam capped by a large horizontal steam pipe running between the street on one side and a mulched or dirt strip and a ledge on the other side. The ledge bordered a drop-off to the uncovered light rail bed and tracks below.

The court entered summary judgment in the Cardinals's favor on the ground that "[t]he record, including photographs of the scene and Plaintiffs own testimony, indicate that the drop-off was not obstructed from her view, either by design or by the presence of other people in the vicinity;" that "the danger posed by a drop-off onto the tracks below is one which is readily and reasonably known;" and that the Cardinals could reasonably expect its invitees to discover the risk posed by the ledge, weigh the risk, and act in accordance with a reasonable appreciation of that risk. It concluded that the condition was open and obvious as a matter of law. A second judge subsequently entered summary judgment in Metro's favor on the same ground, citing the law-of-the-case doctrine. The court denied Mason's motion for summary judgment on this ground because it was not an owner or occupier of the land. Plaintiff then dismissed her cause of action against Mason.

## DISCUSSION

### Introduction

Summary judgment is designed to permit the trial court to enter judgment, without delay, when the moving party has demonstrated, on the basis of facts on which there is no genuine dispute, a right to judgment as a matter of law. Rule 74.04; *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are no different from those that the trial court employs to determine the propriety of sustaining the motion. *ITT Commercial Finance*, 854 S.W.2d at 376. We view the record in the light most favorable to the party against whom summary judgment is entered and accord the non-movant the benefit of all reasonable inferences from the record. *Id.* We take as true every fact set forth by affidavit or otherwise in support of the moving party's summary judgment motion unless the non-movant has denied it in its response. *Id.*

The non-moving party's response must show the existence of some genuine dispute about one of the material facts necessary to the plaintiff's right to recover. *Id.* at 381. A "defending" party may establish a right to summary judgment by demonstrating:

(1) facts negating any one of the elements of the non-movant's claim; (2) 'that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one' of the elements of the non-movant's claim; or (3) 'that there is no genuine dispute as to the existence of facts necessary to support movant's properly pleaded affirmative defense.'

*Goerlitz v. City of Maryville*, 333 S.W.3d 450, 453 (Mo. banc 2011) (quoting *ITT Commercial Finance*, 854 S.W.2d at 381).

A genuine issue is a dispute that is real and not merely argumentative, imaginary, or frivolous. *Thompson v. Western–Southern Life Assur.*, 82 S.W.3d 203, 205 (Mo.App.2002). The Missouri Supreme Court has adopted the following definition for determining when a fact is material:

> "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."

*Martin v. City of Washington*, 848 S.W.2d 487, 491 (Mo. banc 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). As the trial court's judgment is founded on the record submitted and the law, we need not defer to the trial court's order granting summary judgment. *ITT Commercial Finance*, 854 S.W.2d at 376. This makes appellate review essentially *de novo*. *Id.* at 387. A summary judgment may be affirmed under any theory that is supported by the record. *Id.* at 387–88.

The key to summary judgment is the undisputed right to judgment as a matter of law, not simply the absence of a fact question. *Id.* at 380. The adage that the record is viewed "in the light most favorable to the non-movant," does not mean that we disregard facts favorable to the movant in determining whether the movant is entitled to judgment as a matter of law; rather, it means that the movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted. *See id.* at 382.

This is an appeal from the entry of summary judgments in defendants' favor on defendants' motions for summary judgment. The trial court's consideration of the record was limited to the summary judgment record made on defendants' motions. "'[A]ll facts must come into the summary judgment record in the manner required by Rule 74.04(c)(1) and (2), that is, in the form of a pleading containing separate separately numbered paragraphs and a response addressed to those numbered paragraphs.'" *Syngenta Crop Protection v. Outdoor Equip.*, 241 S.W.3d 425, 429 (Mo.App.2007) (quoting *Sloss v. Gerstner*, 98 S.W.3d 893, 898 (Mo.App.2003)). A party confronted by a proper motion for summary judgment may not rest upon mere allegations or denials in his or her pleadings, but in order to overcome the motion, the party must set forth specific facts supported by affidavits, discovery, or admissions on file showing a genuine issue for trial. *ITT Commercial Finance*, 854 S.W.2d at 381; Rule 74.04(e). A non-movant who relies only upon mere doubt and speculation in its response to the motion for summary judgment fails to raise any issue of material fact. *See Rice v. Hodapp*, 919 S.W.2d 240, 244 (Mo. banc 1996); *Miller v. City of Arnold*, 254 S.W.3d 249, 254 (Mo.App.2008). A response that alleges insufficient information to admit or deny a fact does not raise an issue of material fact, and therefore, the fact is deemed admitted. *Glasgow v. Cole*, 88 S.W.3d 114, 117 (Mo.App.2002). Further, a denial must be supported "with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Rule 74.04(c)(2). The failure to submit any evidence to support a denial constitutes an admission. *Martin*, 848 S.W.2d at 495. In addition, if evidence is cited to support a denial, but that evidence does not expressly support a denial, we deem the statement admitted. *See Wehmeyer v.*

*FAG Bearings Corp.,* 190 S.W.3d 643, 649–51 (Mo.App.2006); Rule 74.04(c)(2).

A trial court grants or denies motions for summary judgment on the basis of what is contained in the motion for summary judgment and the responses thereto. *Mothershead v. Greenbriar Country Club,* 994 S.W.2d 80, 85 (Mo.App.1999); *see also Kaufman v. St. Charles County,* 30 S.W.3d 242, 245 (Mo.App.2000). On appeal, our review is confined to the same facts and does not extend to the entire record before the trial court. *Mothershead,* 994 S.W.2d at 85; *see also Sheehan v. Northwestern Mut. Life Ins. Co.,* 44 S.W.3d 389, 395 (Mo.App.2000). We will not consider "facts" that are not set out as "facts in dispute." *Ford v. Cedar County,* 216 S.W.3d 167, 172 (Mo.App.2006).

## I. *Existence of Material Questions of Fact*

For her first point, plaintiff maintains that the trial courts erred in granting defendants' motions for summary judgment "because the open and obvious exception does not negate the defendant landowners' duty to plaintiff, in that genuine issues of material fact exist as to whether the dangerous condition was known or obvious to plaintiff and whether defendants should have anticipated harm to an invitee despite the open and obvious nature of the danger."

▇▇▇ For the purposes of this opinion, we assume that plaintiff had the status of an invitee. When an injured person is an invitee, a possessor of land is liable to the invitee *only if* the possessor:

"(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger."

*Harris v. Niehaus,* 857 S.W.2d 222, 225–26 (Mo. banc 1993) (quoting RESTATEMENT (SECOND) OF TORTS, § 343 (1965)).[1] Accordingly, to meet the applicable standard of care, a possessor of land is required to (1) exercise reasonable care; (2) disclose to the invitee all dangerous conditions which are known to the possessor and are likely not to be discovered by the invitee; and (3) see that the premises are safe for the reception of a visitor, or at lease ascertain the condition of the land, to give such warning that the invitee may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.

*Harris,* 857 S.W.2d at 226 (citing RESTATEMENT (SECOND) OF TORTS, § 343 cmt. b.(1965)).

▇▇▇ "[W]hen the dangerous condition is so open and obvious that the invitee should reasonably be expected to discover it and realize the danger, a possessor of land does *not* breach the standard of care owed to invitees, 'unless the possessor should anticipate the harm despite such knowledge and obviousness.'" *Harris,* 857 S.W.2d at 226 (quoting RESTATEMENT (SECOND) OF TORTS, § 343A(1) (1965)) (emphasis in original). This element recognizes that a possessor of land is not an absolute insurer of the well-being of its invitees. *Harris,* 857 S.W.2d at 226. Rather, a possessor of land is entitled to expect that its invitees will exercise ordinary percep-

---

1. The Missouri Supreme Court adopted sections 343 and 343A(1) of the Restatement (Second) of Torts as accurate statements of Missouri law. *Harris,* 857 S.W.2d at 226.

tion, intelligence, and judgment to discover open and obvious conditions, appreciate the risk these conditions present, and take the minimal steps necessary to avert a tragedy. *Id.* In other words, a possessor of land may "reasonably rely on [its] invitees to see and appreciate the risk presented by" an open and obvious yet dangerous condition on the land, and may "reasonably rely on the invitee's normal sensibilities to protect against such a condition[.]" *Id.* at 227. Thus, "[a]s a general matter, therefore, a possessor's actions do not fall below the applicable standard of care if the possessor fails to protect invitees against conditions that are open and obvious as a matter of law." *Id.* at 226.

A. *Whether the Condition was "Known or Obvious"*

Plaintiff first argues that there is a genuine issue of material fact about whether the dangerous condition was "known or obvious" to plaintiff. In granting summary judgment, the respective trial courts concluded that the condition giving rise to plaintiff's injury was open and obvious as a matter of law.

### 1. *Known*

██ Plaintiff argues that because she never saw the drop-off, it was not "known" to her. However, it is not necessary that the plaintiff "know" of the condition. Whether an invitee may or may not have seen an open and obvious dangerous condition is "totally irrelevant." *Crow v. Kansas City Power & Light Co.,* 174 S.W.3d 523, 537 (Mo.App.2005). The question is whether the invitee should have reasonably seen the condition as a matter of law. *Id.*

### 2. *Obvious*

██ Plaintiff next argues that there was a question of fact about whether the condition was "obvious." We disagree. Plain-

tiff argues that the court failed to consider four "facts," which we repeat verbatim:

1) Plaintiff and others could not get close to the street and had no choice but to proceed in the direction of the pipes and the ledge if they had any hope of actually seeing the parade or getting in to the rally.

2) Plaintiff never saw the ledge before she fell and did not believe a condition such as this would exist on city property open to the public.

3) Plaintiff is short (5'1") and likely wouldn't have seen the drop-off from the Spruce Street side of the pipes.

4) Many other baseball fans climbed over the pipes before Plaintiff. Why would they do so if there was an open, obvious danger just beyond them?

Plaintiff cites deposition testimony, but does not cite where these "facts" were set out in the summary judgment record as additional material facts that remained in dispute as required by Rule 74.04(c)(2). This failure to cite the relevant portion of the record on appeal fails to preserve this issue for review. *Slankard v. Thomas,* 912 S.W.2d 619, 629 (Mo.App.1995). Further, these are not "facts" relating to the actual visibility of the ledge and drop-off to someone who climbed over the pipes. Accordingly, this argument does not demonstrate that the trial court erred in concluding that the condition was open and obvious as a matter of law.

██ In applying the open and obvious exception to premises liability, Missouri courts require only that the dangerous condition be open and obvious so that an invitee would reasonably be expected to realize the danger associated with the condition. *Harris,* 857 S.W.2d at 226; *Heffernan v. Reinhold,* 73 S.W.3d 659, 666 (Mo. App.2002). The dangerous condition in

this case, a drop-off to an open, below-grade light rail right of way, involved a large physical structure and major landscape feature. Cases that involve "a natural or regular condition of land and/or a large physical structure," particularly lend themselves to a finding of an open and obvious condition as a matter of law. *Smith v. The Callaway Bank,* 359 S.W.3d 545, 548–49 (Mo.App.2012). *See, e.g., Harris,* 857 S.W.2d at 226–27 (downward sloping drive to lake), and *Crow,* 174 S.W.3d at 538 (overhead power lines).

The photographic exhibits demonstrate the existence of a steep drop-off from the surface of the land into an area sufficiently large to accommodate below-grade light rail tracks. This large structure and landscape feature was plainly visible to anyone who looked. Plaintiff admitted that nothing obstructed her view of the railroad right of way from where she was standing after she had climbed through the pipes. Defendants could reasonably expect their invitees to discover this condition. *Harris.* 857 S.W.2d at 226–27.

In contrast, in the cases on which plaintiff relies, the dangerous conditions were smaller and could be easily obscured or overlooked. *See, e.g., Lacy v. Wright,* 199 S.W.3d 780 (Mo.App.2006) (holding that a genuine issue of material fact existed over whether a concrete parking bumper, the same color and composition as the parking lot surface, partially covered with snow, was open and obvious); *see also Smith,* 359 S.W.3d at 548 (holding that an issue of fact existed about whether a coin-sized lava rock on a bank's sidewalk was "open and obvious").

For all of the above reasons, the trial courts did not err in concluding that the existence of the ledge and drop-off to the below-grade light rail tracks was open and obvious as a matter of law.

### B. *Whether Defendants Should Have Anticipated the Harm*

Plaintiff next argues that even if the dangerous condition was open and obvious, genuine issues of material fact remained on whether defendants should have anticipated the harm. She invokes the exception to the rule that a possessor of land does not breach the standard of care owed to invitees when the dangerous condition is open and obvious, " 'unless the possessor should anticipate the harm despite such knowledge or obviousness.' " *Harris,* 857 S.W.2d at 226 (quoting Restatement (Second) of Torts, § 343A(1) (1965)). Comment f to § 343A recognizes that there are cases "in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger." The comment continues:

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

RESTATEMENT (SECOND) OF TORTS, § 343A cmt. f (1965).

#### 1. *Distraction*

Plaintiff argues that defendants should have anticipated the harm notwithstanding the obvious danger because of the distraction generally posed by large crowds in the street gathered for the parade and rally and, specifically, the distrac-

tion plaintiff experienced by hearing that Tony LaRussa was driving by.

Plaintiff again cites "facts" about the nature of the crowd and the pedestrian backup without identifying where these "facts" were admitted or identified in the summary judgment motion and responses. Accordingly, we disregard those facts. We do consider plaintiffs testimony that she was distracted by the people, what was going on in the street, the parade, and Tony LaRussa driving by, which was properly in the summary judgment record.

The situations described in illustrations 2 and 4 to comment f to RESTATEMENT OF TORTS § 343A illustrate the applicability of the exception based on a foreseeable distraction. In those illustrations, the dangerous, but obvious, condition protruded into walkways that the possessor provided or could reasonably expect the invitee to use, but distractions and obstructions along the walkway prevented the invitee from seeing the dangerous condition. Restatement of Torts § 343A cmt. f illus. 2, 4 (1965). This is further illustrated in *Bruner v. City of St. Louis*, 857 S.W.2d 329 (Mo.App.1993), in which we held that an airport could reasonably anticipate that a person standing on a moving walkway within the airport would not see the abrupt end to the walkway because of airport distractions along the walkway and the presence of others on the walkway blocking the view.

In this case, the ledge and railroad embankment was not a walkway specifically provided for the invitees' use, and the dangerous condition was not an obstruction in the walkway that could be easily blocked or overlooked because of distractions provided along the walkway. A possessor would not have reason to expect that invitees would climb over and under large horizontal pipes and be so distracted by events behind them on the street side of those pipes that the invitees would not see the ledge, embankment, and below-grade light rail tracks before them on the other side of the pipes. In this context, the exception based on distraction does not apply.

### 2. Advantage Outweighing Risk

■ Plaintiff next argues that an invitee would proceed to encounter the obvious danger because a reasonable person would have found that the advantages of climbing over the pipes to avoid the crowd would outweigh the risk. Plaintiff argues that fans encountering a crowd would be forced with the choice of either climbing over the pipes to get to a point where they could see the parade and enter the stadium or missing the event.

Plaintiff cites "facts" about the crowd and its purpose without indicating where in the summary judgment record those facts were admitted or identified as being in dispute. However, even if these "facts" had been properly identified in the motion, a reasonable person would not have determined that the advantage of walking next to a steep embankment to see the parade and rally outweigh the risk of falling off that embankment. Rather, to a reasonable person, the risk of falling from the ledge would far outweigh the advantage of using this route to access the parade and the rally.

This situation is unlike that in *Hellmann v. Droege's Super Market, Inc.*, 943 S.W.2d 655 (Mo.App.1997), in which we held the benefits for a supermarket invitee parking on the supermarket's parking lot outweighed the risks posed by an icy patch on the lot between the parking space and the store entrance. Here, none of the events plaintiff wanted to see were on the railroad embankment side of the pipes; the drop-off to the tracks posed far more danger than an icy patch; and unlike the parking

lot, the ledge along the drop-off was not an area that defendants specifically provided to access events on the street or in the stadium. In this situation, the exception based on an advantage that outweighs the risk does not apply.

### 3. *Anticipation of Harm*

Neither of plaintiff's arguments demonstrates a basis on which defendants should have anticipated harm. The critical question is whether defendants could *reasonably rely* on their invitees to protect themselves from the danger presented by the ledge and drop-off or whether the defendants *should have expected* that persons encountering the ledge would not appreciate the danger or would be unable to walk away from it. *Harris*, 857 S.W.2d at 226. As we have previously set out, a landowner is entitled to expect that its invitees will exercise ordinary perception, intelligence and judgment, discover an obvious condition, appreciate the risk it presented, and take the minimal steps necessary to avert a tragedy. *Id.* The summary judgment facts demonstrate that this is a situation in which a landowner could reasonably rely on its invitees to protect themselves from danger.

In *Huxoll v. McAlister's Body & Frame, Inc.*, 129 S.W.3d 33, 35 (Mo.App.2004), the plaintiff, a body shop customer who was trying to exit the shop, went through a locked door, attempted to walk over or around a pile of unbarricaded sheet metal laying on the floor on the other side of the door, and cut himself on the sheet metal. Plaintiff conceded that the sheet metal was open and obvious, but argued that the body shop should have anticipated that an invitee would attempt to go through the locked door and over the sheet metal. The court disagreed because after the plaintiff saw the sheet metal, he could have avoided it by exiting the building through another door or by asking an employee to clear the way. *Huxoll*, 129 S.W.3d at 35–36. It held that there was no evidence in the record that the body shop should have anticipated that someone would "try to get around" the pile of scrap metal rather than using one of the remaining open doors. *Id.* at 37. "Instead, the record establishes that the Body Shop owner would reasonably have anticipated that [plaintiff] had other ways to exit the building besides this door." *Id.* The court concluded that under these facts, the body shop "could not, as a matter of law, reasonably anticipate that an invitee would open the locked door, recognize the danger of the sharp metal, and still attempt to 'get around' it." *Id.*

Under the facts in the summary judgment record, defendants were entitled to assume that the danger presented by the ledge and drop-off to the open, below-grade light rail bed would be so obvious to persons who ventured on the other side of the pipes that they would be expected to discover it and would rely on their normal sensibilities to appreciate the danger and exercise due care to avoid the obvious risk of danger presented by the ledge and drop-off. There is no genuine issue of material fact about whether defendants should have anticipated the harm despite the obvious existence the ledge and drop-off into the below-grade rail bed. For all of the above reasons, point one is denied.

## II. *Narrow Circumstances*

For her second point, plaintiff contends that the trial courts erred in granting defendants' motions for summary judgment, "because the open and obvious exception does not negate the defendant landowners' duty to plaintiff, in that Missouri courts only apply the open and obvious exception in very narrow circumstances, none of which are present here."

In the argument under this point, plaintiff argues that Missouri appellate courts have limited the exception set out in *Harris* to situations in which the plaintiff failed to use due care or admitted that he or she was aware of the dangerous condition. We disagree that Missouri courts have specifically limited the open and obvious exception to the situations identified by plaintiff. Rather, the Restatement analysis as adopted in *Harris* continues to define the parameters of this exception. We have analyzed plaintiffs arguments within the *Harris* framework in our discussion under point one. To the extent that plaintiffs arguments rely on an analysis inconsistent with *Harris*, we summarily reject them. Point two is denied.

### III. *Consistency with Missouri Comparative Fault Law*

For her third point, plaintiff asserts that the trial court erred in granting defendants' motions for summary judgment, "because the open and obvious exception is inconsistent with Missouri comparative fault law, in that the openness and obviousness of a dangerous condition should bear on a plaintiffs comparative fault rather than the duty of the landowner." She argues that even if the trial courts had properly applied the open and obvious exception, "the mere application of that doctrine is at odds with Missouri comparative fault law." We summarily deny plaintiffs third point because the Missouri Supreme Court reaffirmed the open and obvious doctrine after it adopted comparative fault. *Harris*, 857 S.W.2d at 226–27; *see Becker v. Setien*, 904 S.W.2d 338, 347–48 (Mo.App. 1995); *Seymour v. Lakewood Hills Ass'n*, 927 S.W.2d 405, 410 (Mo.App.1996). Point three is denied.

*Conclusion*

The judgments of the trial courts are affirmed.

MARY K. HOFF, J., concurs.

LISA VAN AMBURG, J., dissents in a separate opinion.

LISA VAN AMBURG, Judge.

I respectfully dissent. Summary judgment should not have been granted because there remain genuine issues of material fact for the jury to decide whether Plaintiff was reasonably distracted from discovering the forty-foot drop-off and whether Defendants should have anticipated the harm.

### DISCUSSION

It is a fact of human nature, surely well understood by the Cardinals and Metrolink, that an individual in a "madding crowd" can be distracted from a hazard otherwise open and obvious. The following facts are properly in the summary judgment record. Plaintiff Holzhausen never saw the drop-off nor did she anticipate the hazard because she trusted such a drop-off would be fenced in. (LF 48, 78, 187–188).[1] She had never been in this area before and did not see the drop-off when she stepped onto the ledge that was Cardinals' property. (LF 45–46, 48, 186–187). As she climbed over the second pipe, others in the crowd seeking a view of the approaching parade were already straddling the pipe. (LF 49, 187). She never saw that she had approached an unprotected ledge because she was immediately distracted from the hazard when someone in the crowd shouted "Here

1. All references to the Legal File (LF) contained herein refer directly to the Summary Judgment record, e.g., Defendant Cardinals' motion for summary judgment Exhibit A, Holzhausen Deposition and Plaintiff's responsive pleading, citing portions of her deposition to demonstrate material issues of fact in dispute.

comes Tony LaRussa on the beer wagon." (LF 48; 187). As she turned her head toward the beer wagon, someone accidentally bumped her, causing her to fall off the ledge. (LF 48, 187).

This Court has found a genuine issue of fact remains if a jury could reasonably infer that a reasonable plaintiff may have been distracted from discovering a hazardous condition. *Bruner,* 857 S.W.2d 329. In *Bruner,* this Court recognized a crowd can play a role in distracting someone from observing a potentially hazardous condition. *Id.* at 333. There, the plaintiff, while on a moving walkway at the airport, fell and injured himself when he failed to see that the walkway was ending. *Id.* at 331. Plaintiff had been in airports previously, had ridden on other moving walkways, and anticipated that he would be given some type of warning that the end of the walkway was near. *Id.* Our court reversed the trial court's grant of summary judgment and remanded, finding questions of fact remained for the jury because plaintiff failed to discover the hazard in part due to typical airport diversions, such as "crowds, restaurants, shops, direction signs, and luggage." *Id.* at 333. Here, Plaintiff properly presented evidence in the summary judgment record that the drop-off and risk of harm were not reasonably apparent to her due to typical diversions created by large crowds and an approaching parade. Under *Bruner,* the jury should decide whether Plaintiff was reasonably distracted from the danger.

Furthermore, there is sufficient evidence in the summary judgment record for a jury to decide whether Defendants should have anticipated the harm. The Cardinals and Metrolink presumably have extensive experience with crowd behavior, both in and outside the stadium. In *Boll v. Chicago Park Dist.,* 249 Ill.App.3d 952, 189 Ill.Dec. 765, 620 N.E.2d 1082, 1088

(1991), "plaintiff was forced to contend with the magnitude of the crowd and his frustration at being unable to depart from the stadium in a more expedient fashion." "Defendant knew that the inability to exit had caused other invitees to climb over the railings." *Id.* The court stated, "[d]efendant could have reinforced the railing or opened more exit routes. Yet, defendant did nothing." *Id.* The court in *Boll* therefore held "that the trial court did not abuse its discretion in finding that defendant owed its invitees a duty of reasonable care with respect to an unreasonable danger posed by the conditions, even if they could be considered open and obvious." *Id.* Likewise, Plaintiff here contends the large crowd and excitement over the approaching beer wagon distracted her from the hazard. Other people were straddling the same pipe she climbed over before she was accidentally bumped over the edge. These facts are sufficient to submit to the jury the issue of whether Defendants should have anticipated that distractions of the parade and crowd would possibly result in someone tumbling over the unprotected ledge.

It is up to the jury to decide whether Plaintiff was reasonably distracted from the danger, whether the distraction contributed to her fall, and whether Defendants should have anticipated the harm. These are uniquely factual issues for juries to decide, not judges. I would therefore reverse and remand for trial.