

# Missouri Court of Appeals

## Southern District

## Division One

METROPOLITAN NATIONAL BANK, )
)
       Plaintiff/Appellant, )
)
   vs. ) No. SD33161
) Filed: February 23, 2015
COMMONWEALTH LAND TITLE )
INSURANCE COMPANY, )
)
       Defendant/Respondent. )

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark E. Fitzsimmons, Associate Circuit Judge

**REVERSED AND REMANDED**

Metropolitan National Bank ("Metropolitan") appeals summary judgment entered in favor of Commonwealth Land Title Insurance Company ("Commonwealth"). We reverse and remand this matter to the trial court for further proceedings.

## Factual and Procedural History

On February 2, 1999, Jo Belle Hopper ("Hopper") sold a parcel of real property ("Tract 3") to Red Rocket Fireworks, Inc. ("Red Rocket"), in exchange for Red Rocket's promissory note and deed of trust. In June 2005, Red Rocket notified Hopper that it intended to apply for a loan with Metropolitan, to be secured by five tracts of land, including Tract 3. In order for Red Rocket to secure the loan, Red Rocket needed Hopper to subordinate her promissory note and deed of trust on Tract 3 to Metropolitan.

On June 22, 2005, Hopper executed a "Subordination Agreement." The Subordination Agreement recited that the Hopper deed of trust was subordinated to Metropolitan's note and deed of trust. Thereafter, Red Rocket received a loan from Metropolitan in the amount of $1,915,340, in exchange for a note and deed of trust. The Subordination Agreement was notarized by an employee of Guaranty Title Company ("Guaranty Title"), an agent of Commonwealth. All the documents were recorded on June 24, 2005, with Metropolitan's note and deed of trust being first recorded.

On June 24, 2005, Commonwealth issued a "Loan Policy of Title Insurance," policy number H55-0121124 ("the Policy") to Metropolitan, insuring the validity and priority of Metropolitan's note and deed of trust. The coverage provision pertinent to this appeal states:

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, [Commonwealth], insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:
>
> . . . .
>
> 6.      The priority of any lien or encumbrance over the lien of the Insured mortgage;

2

The "Exclusions From Coverage" reads in part:

> The following matters are expressly excluded from the coverage of this policy, and [Commonwealth] will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
>
> . . . .
>
> 3.      Defects, liens, encumbrances, adverse claims or other matters
>
>      (a)     created, suffered, assumed, or agreed to by the Insured claimant;
>
>      (b)     not known to [Commonwealth], not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to [Commonwealth] by the Insured claimant prior to the date the insured claimant became an insured under this policy;

Red Rocket subsequently defaulted on its loan. On December 11, 2009, Red Rocket filed a Chapter 11 bankruptcy petition, listing the Metropolitan note and deed of trust as one of its debts. Thereafter, Metropolitan filed a creditor's motion to lift the automatic stay, requesting an order from the bankruptcy court to allow it to enforce its rights under its note and deed of trust on four of the five tracts of land, including Tract 3. On January 8, 2010, the bankruptcy court entered an order sustaining Metropolitan's motion.

Metropolitan then entered into an agreement to sell the four tracts of land to "Love's Travel Stop & Country Stores, Inc.," for $1,175,000. On February 15, 2010, Metropolitan published a "Notice of Trustee's Sale" on the four tracts of land—to be foreclosed on—on February 24, 2010.

On February 23, 2010, Hopper filed a petition for injunctive relief, declaratory judgment, and fraud, challenging Metropolitan's right to sell Tract 3, alleging, among other things, that Metropolitan had committed fraud, and that Metropolitan or Red Rocket failed to provide consideration for the Subordination Agreement. Metropolitan denied in its answer that it had committed fraud, and as an affirmative defense, Metropolitan alleged that Hopper had "executed

3

a valid and enforceable subordination agreement . . . that governs the parties' respective priorities and effectively bars and waives [Hopper]'s claims in this case and releases [Metropolitan] from such claims."

In lieu of a temporary restraining order, Hopper allowed Metropolitan to complete the foreclosure sale in exchange for escrowing the amount of money Hopper claimed owed to her, pending resolution of the Hopper lawsuit.[1]

On April 26, 2010, Metropolitan tendered the defense of Hopper's claims to Commonwealth under the Policy. Metropolitan advised Commonwealth that "Hopper's petition claims her deed of trust has priority over [Metropolitan]'s deed of trust." Metropolitan advised the case would "likely be resolved on the parties' summary judgment motions because the material facts are, for the most part, not in dispute." With its claim, Metropolitan provided Commonwealth the title policy, deeds of trust, Subordination Agreement, Hopper's petition, and Metropolitan's answer in which it denied Hopper's claims of fraud.

On August 4, 2010, Commonwealth denied Metropolitan's claim under the Policy, stating, "[Commonwealth] has considered the information you have provided and the terms of the Policy and has determined that the claim is not afforded coverage." Commonwealth's denial letter continued:

> [Hopper] is claiming priority based on the terms of the Subordination Agreement negotiated with [Metropolitan], the representations made by [Metropolitan] to [Hopper] in obtaining the Subordination Agreement negotiated with [Metropolitan], and subsequent actions taken by [Metropolitan] in breach of the terms of the Subordination Agreement. Further, [Hopper] is alleging that [Metropolitan] fraudulently induced [Hopper] to enter into the Subordination Agreement.

Commonwealth indicated that any title defect "is a defect 'created, suffered, assumed, or agreed to by the Insured Claimant' pursuant to Exclusion 3(a) of the Policy"; that "[a]ny defect arising

---

[1] The record is not clear on the date, but at some point, Metropolitan settled the lawsuit with Hopper for $35,000.

4

from the Subordination Agreement transaction is therefore excluded from coverage pursuant to Exclusion 3(b) of the Policy[,]" and that any loss or damage arising from Hopper's deed of trust "was specifically excepted from coverage in Schedule B Part I of the Policy."

On March 10, 2011, Metropolitan filed a two-count petition seeking damages from Commonwealth for breach of contract in refusing coverage, and vexatious refusal to pay. Commonwealth filed an answer to the petition and included specific affirmative defenses, which included:

> 6.      Pursuant to Exclusion No. 3(a) of the referenced policy of title insurance, matters such as those set forth in the 'Hopper Lawsuit' were excluded because the allegations of priority contained therein were predicated entirely upon conduct allegedly undertaken by the plaintiff herein and, as such, any resulting adverse claim was 'created, suffered, assumed, or agreed to' by the plaintiff herein.
>
> 7.      Pursuant to Exclusion 3(b) of the referenced policy of title insurance, matters such as those set forth in the 'Hopper Lawsuit' were excluded because the allegations of priority contained therein were based upon matters that (a) were not part of the public record, (b) were known by the plaintiff herein; (c) were not known by the defendant herein; and (d) were not disclosed in writing by the plaintiff herein.

After some discovery, Commonwealth filed a motion for summary judgment, a statement of uncontroverted material facts, and a memorandum in support of its motion for summary judgment.[2] Commonwealth's first three paragraphs in its statement of uncontroverted material facts stated:

> 1.      On February 23, 2010, Jo Belle Hopper ("Hopper") sued plaintiff Metropolitan National Bank ("MNB"] in Greene County, Missouri Cause No. 1031-CV02717 (which case is hereinafter referred to as "the Hopper - MNB Case"). See Exhibit "1", which is a copy of the Verified Petition which Harper [sic] filed in the Hopper - MNB Case.

---

[2] Metropolitan also filed a motion for summary judgment, which was overruled by the trial court.

2. In the Hopper - MNB Case, Hopper sought a declaratory judgment that a written subordination agreement which she had signed in favor of MNB was unenforceable based upon the actions of MNB. See Exhibit 1, Paragraph 43.

3. Hopper also claimed in the Hopper - MNB Case that the written subordination agreement she executed in favor of MNB should be rescinded due to MNB's fraud. See Exhibit 1, Paragraphs 52 - 58.

Commonwealth's memorandum asserted that there were undisputed facts that established it did not have an obligation to defend Metropolitan, pursuant to Exclusions 3(a) and 3(b) of the Policy. Commonwealth explained in its brief:

[Commonwealth] denied [Metropolitan]'s tender of defense based upon the Policy's language (which expressly excludes 'acts of the insured'), the accusations set forth by Hopper in her claim for priority over [Metropolitan]'s deed of trust (which were based solely upon things allegedly said or done by [Metropolitan]), and [Metropolitan]'s statement that the material facts underlying Hopper's claim were 'for the most part, not in dispute.'

On May 24, 2013, Metropolitan filed its memorandum in opposition to Commonwealth's motion for summary judgment and its response to Commonwealth's statement of uncontroverted material facts with supporting exhibits. Metropolitan admitted suit was filed on February 23, 2010, and denied paragraphs 2 and 3 with supporting exhibits. Metropolitan argued that there were issues of material fact with respect to these paragraphs.

Metropolitan also asserted in the summary judgment record that Guaranty Title had contacted Hopper's attorney prior to signing the Subordination Agreement, that Hopper discussed the Subordination Agreement with an employee of Guaranty Title before signing it, and that Hopper signed the Subordination Agreement at Guaranty Title's office.

On December 12, 2013, a hearing was held on Commonwealth's motion for summary judgment. On December 23, 2013, the trial court entered its "Order and Judgment" sustaining Commonwealth's motion for summary judgment. This appeal followed.

6

In three points on appeal, Metropolitan contends the trial court erred in granting summary judgment in favor of Commonwealth on Metropolitan's claims because there were genuine issues of material fact and Commonwealth was not entitled to summary judgment as a matter of law. We combine Point I and Point II for ease of analysis and find them to be meritorious.[3]

The issue for our determination is whether the trial court erred in granting summary judgment in favor of Commonwealth.[4]

## Standard of Review

Our review of a trial court's grant of summary judgment is essentially *de novo*, and we view the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

When the moving party is the defending party, as in this case, summary judgment is established where the defending party shows:

> (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defenses.

*Id.* at 381 (emphasis in original).

Once the movant has made "a prima facie showing that there are no genuine issues of material fact and that movant is entitled to judgment as a matter of law," the burden shifts to the

---

[3] We do not address Point III because it raises an issue that was not a basis asserted by Commonwealth in support of its motion for summary judgment below.

[4] We observe that there is substantial doubt as to both parties' compliance with Rule 74.04 in terms of submitting an appropriate statement of uncontroverted material facts and the responses to it. We address the parties' positions in this opinion in accordance with our standard of review, as best we discern the issues presented in the appeal.

All rule references are to Missouri Court Rules (2014).

non-movant to show that one or more of the material facts shown by movant not to be in dispute, is actually genuinely disputed. *Id.* "The non-movant may not rest upon the allegations and denials of the pleadings, but rather must use affidavits, depositions, answers to interrogatories, or admissions on file to show the existence of a genuine issue for trial." *Crow v. Crawford & Co.*, 259 S.W.3d 104, 113 (Mo.App. E.D. 2008). "A genuine dispute is one that is real, not merely argumentative, frivolous, or imaginary." *Id.*

"The key to summary judgment is the undisputed right to judgment as a matter of law; not simply the absence of a fact question." *ITT Commercial Finance Corp.*, 854 S.W.2d at 380. Summary judgment must still be denied if all of the uncontroverted "factual assertions are not sufficient to entitle the movant to judgment as a matter of law." *Jordan v. Peet*, 409 S.W.3d 553, 558 (Mo.App. W.D. 2013). "Summary judgment should not be granted unless evidence could not support any reasonable inference for the non-movant[]" by which non-movant could state, as applicable, a claim or defense. *Grissom v. First Nat'l. Ins. Agency*, 364 S.W.3d 728, 735 (Mo.App. S.D. 2012) (internal quotation and citation omitted).

A legal conclusion brandished as a statement of fact must be disregarded in evaluating a motion for summary judgment, even if that statement is admitted by non-movant. *Jordan*, 409 S.W.3d at 558-61.

Applying these principles, we must first determine whether movant, Commonwealth, submitted a statement of uncontroverted material facts that entitled Commonwealth to judgment as a matter of law. If the answer to that question is in the negative, then Commonwealth did not satisfy its initial burden, and summary judgment should not have been granted.

**Analysis**

It was error for the trial court to sustain Commonwealth's motion for summary judgment for the reason that Commonwealth failed to demonstrate that there were no genuine issues of material fact, thereby entitling it to judgment as a matter of law.

Commonwealth premises its right to summary judgment on the allegations in the Hopper petition. Commonwealth's argument presumes that the *contents* of the Hopper petition are facts in the summary judgment record admitted by Metropolitan—this is not demonstrated. The three paragraphs in Commonwealth's statement of material facts discussing the Hopper petition are as follows:

> 1.   On February 23, 2010, Jo Belle Hopper ("Hopper") sued plaintiff Metropolitan National Bank ("MNB"] in Greene County, Missouri Cause No. 1031-CV02717 (which case is hereinafter referred to as "the Hopper - MNB Case"). See Exhibit "1", which is a copy of the Verified Petition which Harper [sic] filed in the Hopper - MNB Case.

> 2.   In the Hopper - MNB Case, Hopper sought a declaratory judgment that a written subordination agreement which she had signed in favor of MNB was unenforceable based upon the actions of MNB. See Exhibit 1, Paragraph 43.

> 3.   Hopper also claimed in the Hopper - MNB Case that the written subordination agreement she executed in favor of MNB should be rescinded due to MNB's fraud. See Exhibit 1, Paragraphs 52 - 58.

The statement in paragraph 1 only calls for Metropolitan (non-movant) to controvert whether Hopper sued Metropolitan in Greene County, Missouri, on February 23, 2010, in Case No. 1031-CV02717. Metropolitan admitted that fact. It does not call for Metropolitan to controvert that Exhibit 1 is a true and accurate copy of the Hopper petition—a non-movant admits or controverts the *fact* contained in a movant's statement of uncontroverted material fact, not the accuracy or veracity of the support therefor. *See Holzhausen v. Bi-State Dev. Agency*, 414 S.W.3d 488, 494 (Mo.App. E.D. 2013) (internal quotations and citations omitted):

9

> All facts must come into the summary judgment record in the manner required by Rule 74.04(c)(1) and (2), that is, in the form of a pleading containing separate separately numbered paragraphs and a response addressed to those numbered paragraphs. . . . A trial court grants or denies motions for summary judgment on the basis of what is contained in the motion for summary judgment and the responses thereto. On appeal, our review is confined to the same facts and does not extend to the entire record before the trial court.

As Rule 74.04 makes clear, each factual statement is what is to be admitted or controverted—the exhibits, affidavits and other attachments are merely support to show that there is a *prima facie* lack of genuine issue as to each stated fact: "[t]he statement shall state with particularity in separately numbered paragraphs each material fact as to which movant claims there is no genuine issue, with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts." Rule 74.04. We accept as true facts set out by pleadings, exhibits, affidavits, and other supporting materials unless those facts are effectively controverted by non-movant, ***ITT Commercial Finance Corp.***, 854 S.W.2d at 376, but only where the contents (or the foundation for admission) of these supporting materials are properly set out as *facts* pursuant to the requirements of Rule 74.04. *See* ***Holzhausen***, 414 S.W.3d at 494.

The statements in paragraphs 2 and 3 are conclusory statements and legal conclusions. These species of statements, even if uncontroverted, are not "facts" for purposes of Rule 74.04, and cannot form the factual basis for summary judgment. ***Jordan***, 409 S.W.3d at 560-61. Even if this were not the case, Metropolitan effectively controverted these statements by denying their accuracy and provided exhibits in support of the denials. The remaining statements in Commonwealth's statement of uncontroverted facts are insufficient to support Commonwealth's burden to show that there was no possibility of coverage under Exclusions 3(a) or 3(b).

On the record before us, to be entitled to summary judgment, Commonwealth had to show that there was no possibility of coverage based on one of its two affirmative defenses: Exclusions 3(a) or 3(b). *Allen v. Continental Western Ins. Co.*, 436 S.W.3d 548, 552 (Mo. banc 2014); *City of Lee's Summit v. Missouri Public Entity Risk Management*, 390 S.W.3d 214, 219 (Mo.App. W.D. 2012). Even if we assume Commonwealth's statement of material facts as uncontroverted, it still does not establish a right to summary judgment as a matter of law.

Under Exclusion 3(a), Commonwealth had to show that there was no genuine issue of material fact that, based on the allegations in the Hopper petition, Metropolitan created the title defect for which it sought coverage. However, where the allegations of a petition merely show that an exclusion *may* apply, this does not demonstrate that insurer has no duty to defend. *See Allen*, 436 S.W.3d at 552 (insurer has duty to defend where there is a possibility of coverage based on allegations in the petition).

Even if we were to consider the allegations of the Hopper petition (which we cannot on this summary judgment record under Rule 74.04), the Hopper petition only alleges that either Red Rocket *or* Metropolitan failed to give consideration for the Subordination Agreement. This does not show that there is no possibility someone other than Metropolitan created the defect—to the contrary, the petition shows on its face the possibility that Red Rocket created the title defect. There is a genuine issue of material fact as to whether there was no possibility of coverage, based on the allegations of the Hopper petition, as to whether Metropolitan created the title defect for which it sought coverage. Commonwealth was not entitled to judgment as a matter of law on the basis of Exclusion 3(a).

Under Exclusion 3(b), Commonwealth had to show there was no genuine issue of material fact that the title defect existed at the time Metropolitan became insured under the

11

Policy; Metropolitan was aware of it, Commonwealth was not aware of it, and it was not publicly recorded; and Metropolitan failed to disclose it in writing to Commonwealth under Exclusion 3(b).

The summary judgment record shows an issue of genuine material fact as to whether Metropolitan knew of any title defect unknown to Commonwealth. The record creates issues of genuine material fact as to whether Guaranty Title contacted Hopper's attorney prior to the signing of the Subordination Agreement in connection with Red Rocket's refinancing; whether Hopper discussed the Subordination Agreement with any agent of Metropolitan prior to its execution; and whether Hopper signed the Subordination Agreement at Guaranty Title's office.

The summary judgment record shows that Commonwealth conceded that Guaranty Title was its agent. As a matter of law, Guaranty Title's knowledge is imputed to Commonwealth. *Weatherwax v. Redding*, 953 S.W.2d 162, 167 (Mo.App. S.D. 1997). On this basis, there is a genuine issue of material fact as to whether Metropolitan knew of any title defect unknown to Commonwealth. Commonwealth was not entitled to judgment as a matter of law on the basis of Exclusion 3(b).

The trial court erred in granting summary judgment in favor of Commonwealth. This case is reversed and remanded for further proceedings consistent with this opinion.

WILLIAM W. FRANCIS, JR., C.J./P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concur

DANIEL E. SCOTT, J. - Concur